

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 15, 2019

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
United States District Court for the
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Menachem Abramov*,
            **17 Cr. 262 (LGS)**

Dear Judge Schofield:

      The Government respectfully writes to respond to defendant Menachem Abramov's November 14, 2019 letter regarding restitution. *See* ECF Doc. 566. Abramov opposes the entry of an order of restitution on the theory that the government's proposal would overcompensate the victims for their losses. Given that that government has proposed to require Abramov pay the value of diamonds he and his conspirators obtained, based on prices they previously agreed to pay for them, Abramov's opposition is as audacious as it is unfounded. The trial record demonstrates that Abramov contributed to at least $9,452,663.24 in victim losses; the Court should order restitution in at least that amount.

## Background

      Menachem Abramov and his co-conspirators defrauded numerous diamond merchants in Mumbai, India by placing orders for diamonds on terms they never intended to honor. As shown during the trial, Abramov and others handpicked the diamonds they wanted and negotiated prices for the acquisition of those diamonds, including by bargaining down prices they perceived as being too high. *See*, *e.g.*, Tr. 270:25-271:04, 298:01-15. Once the defendants selected the diamonds and the parties agreed to the prices, the victims prepared invoices reflecting U.S. dollar values for the specific diamonds described in the invoice. *See, e.g.*, GX-402G. The victims then sent the diamond parcels to Abramov and his co-conspirators in New York by secure commercial

interstate carrier, such as Brink and Malca- Amit. Records of those shipments typically included both the "invoice value" and "liability value" for each parcel. *See, e.g.* GX 100C-02.

On September 5, 2019, in connection with sentencing, the government assembled a table of losses broken down by invoice, with citations to the relevant exhibits and trial transcript. *See* Ex. 1 to ECF Doc. 536. As this Court subsequently found, those records demonstrated that the losses attributable to Abramov totaled approximately $9,452,663.24. *See* Presentence Investigation Report dated November 6, 2019, ECF Doc. 559, at ¶ 41. Accordingly, at Abramov's sentencing, the government presented the Court with a proposed order of restitution in the amount of $9,452,663.24 (the "Proposed Restitution Order"); the Proposed Restitution Order was identical in all material respects to the order adopted by the Court with respect to defendant Sholom Muratov. *See* ECF Doc. 554.

By letter dated November 14, 2019, Abramov objects to the entry of the Proposed Restitution Order. Abramov contends that the invoiced values were artificially high: "In this case, although the government has provided no proof of lost sales and profits, it seeks to hold Mr. Abramov responsible for them by equating the inflated invoice prices with the items' actual value." ECF Doc. 566 at 2. In his letter, however, Abramov does not quantify the degree of supposed price inflation, does not propose an alternative restitution amount, and does not offer a method by which the Court could fix restitution.

## Discussion

The record before the Court amply justifies the entry of the Proposed Restitution Order.

*Applicable Law*

The Mandatory Victim Restitution Act ("MVRA") requires restitution where (a) the offense was "committed by fraud or deceit" and (b) "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (c)(1)(B).

The MVRA creates a procedural framework for identifying, entering, and modifying restitution orders. Within that framework, the MVRA apportions responsibility for various tasks between the parties. The Government, for example, must demonstrate "the amount of the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e); *United States v. Reifler*, 446 F.3d 65, 122 (2d Cir. 2006).  A defendant must demonstrate her "financial resources . . . and the financial needs of the defendant's dependents." *Id*. On "other matters," the MVRA affords the district court the discretion to designate either party to bear the burden of proof "as justice requires." *Id*. At no "phase of a restitution order," however, may a victim be required to participate. *Id*. § 3664(g)(1).

A restitution award need only to be a reasonable estimate of the victim's actual losses. *See United States v. Germosen*, 139 F.3d 120, 129-30 (2d Cir. 1998); *United States v. Donaghy*, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008), *aff'd sub nom. United States v. Battista*, 575 F.3d 226 (2d Cir. 2009). Although estimates are appropriate, a court must base its restitution award on more than mere speculation about a victim's actual losses. *See United States v. Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003). Uncertainties with respect to the amount in question should be resolved in favor of the victim in accord with the statutory focus on making the victim whole. *See United States v. Boccagna*, 450 F.3d 107, 119 (2d Cir. 2006) ("[R]estitution attempts to compensate for loss by restoring the victim to a position he occupied before the injurious event." (quotations and alterations omitted)); *United States v. Coriaty*, 300 F.3d 244, 253 (2d Cir. 2002) (observing "the statutory focus on the victim's losses and upon making victims whole").

Where the return of specific property "is impossible, impracticable, or inadequate," a defendant must pay the victim "the greater" of "the value of the property on the date of the damage, loss, or destruction" and "the value of the property on the date of sentencing," less the value of any amount returned. 18 U.S.C. §§ 3663A(b)(1)(B). While the concept of "value" is flexible, the U.S. Court of Appeals for the Second Circuit has noted that "in most circumstances, fair market value will be the measure most apt" to return victims to their original state of well-being. *Boccagna*, 450 F.3d at 119.

*Analysis*

The government has demonstrated that Abramov owes restitution in at least the amount of $9,452,663.24. As reflected by the testimony of numerous trial witnesses, the victims parted with valuable diamond merchandise and did not receive promised compensation in return. *See, e.g.*, Tr. 312:10-23 (Gandhi describing "Big monetary loss."); Tr. 882:20-25 (Daga describing "About $1.2 million" in losses). The victims recorded the property they lost and the prices they had bargained to receive for that property in contemporaneous invoices. Those invoices reflect a reasonable measure of the value of these losses because they reflect a price the victims were willing to accept and the culmination of the defendants' negotiations. *Cf. Boccagna*, 450 F.3d at 115 ("'Fair market value' is defined as the 'price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction'"). Further, even though the Court would be firmly within its authority to order restitution based on an estimate, *see Donaghy*, 570 F. Supp. 2d at 423 (collecting cases), the Government here supplied the Court with particulars of the transactions involved: record evidence of each parcel sent by the victims and the payment amounts still outstanding. *See* Ex. 1 to ECF Doc. 536. The resulting total—$9,452,663.24—satisfies the MVRA's mandate to require the defendant to pay "the value of the property on the date of the damage, loss, or destruction." *See* 18 U.S.C. §§ 3663A(b)(1)(B).

Abramov's principal objection appears to be his belief that the invoices reflect "inflated" prices and therefore cannot be the basis for a reasonable estimate of victim losses. *See* ECF 566

at 2 & n.1. While he does not explicitly say so, Abramov implies that he would have bargained for lower prices if he had actually intended to pay them. But that argument runs counter to Abramov's position at trial: Abramov elicited testimony from victims and the government's cooperator that he attempted to negotiate the best prices possible from the victims. *See, e.g.*, Tr. 270:25-271:04, 298:01-09 (Q: "Just so we're clear for the jury then, Mr. Abramov was trying to get a really good price from you? That is, he was trying to get you to come down as low as possible; is that right? A: Yes."); Tr. 366:01-03 (Q: "Now, sir, is it also fair to say that what Mr. Abramov also was doing was trying to get the best price from you? A: Yes."); Tr. 696:07-13. Additionally, Abramov speculates that any insurance payments[1] to the victims "would be for the replacement (wholesale) value rather than the inflated retail prices contained in the invoices," though he provides no basis for believing that "replacement" value is necessarily less than the invoice prices. *See* ECF 566 at 3 n.2. As it happens, however, most, if not all, of the parcels shipped to the defendants were insured by Malca-Amit and Brinks for a "liability value" *in excess* of the invoice price. *See, e.g.*, Tr. 182:04-12 (explaining "liability value" and "invoice value"); GX 100C-02 (example shipping record with liability value in excess of invoice value). From the victims' perspective, the diamonds were worth every penny declared on the invoices and they acted accordingly. Having told the victims he and his coconspirators would pay the amounts in the invoices, and having established at trial that Abramov attempted to negotiate the best prices for diamonds, Abramov cannot now complain that the prices he said he would pay are not a reasonable measure of loss.

Abramov fares no better when he attacks the Proposed Restitution Order on the theory that the government "has provided no proof of lost sales and profits." ECF Doc. 566 at 3. To the extent that Abramov means to suggest that the government has not established any victim losses at all, Abramov flatly ignores the trial record, this Court's loss findings at sentencing, and statements from the victims themselves. If the suggestion is that the Proposed Restitution Order seeks the value of anticipated future profits that the victims would have made in their businesses but for the defendants' conduct, it is misplaced; the Proposed Restitution Order seeks to reimburse the victims for the merchandise fraudulently obtained by the defendants. *See, e.g.*, Ex. 1 to ECF Doc. 536 (identifying testimony and exhibits for each invoice). Thus, Abramov misses the mark when he likens his argument to *United States v. Ferdman*, 779 F.3d 1129 (10th Cir.

---

[1] Abramov also writes that "[T]he government has informed us that no insurance claims were filed by the victims." ECF Doc. 566 at 3 n.2. Abramov's summary is inaccurate: In response to Abramov's request to confirm that victims had not submitted insurance claims, government counsel responded, in part, that counsel had not asked any of the victims about insurance since the interviews reflected in the 3500 material produced prior to trial, and had not heard about any victims receiving money from any insurance claims. Beyond what was discussed prior to or during the trial, *see, e.g.* Tr. 301:20-24, the government is not aware of whether claims have been submitted or not. In any event, Abramov's assumption that the victims insured every transaction ignores the trial evidence that the victims only had transaction insurance for a few counterparties. *See* Tr. 881:11-18.

2015), where the U.S. Court of Appeals for the Tenth Circuit vacated and remanded a restitution order that included lost sales and profits because government had not presented evidence of such losses in that case. *See* 779 F.3d at 1136, 1339 ("All the Government would have to establish is that Defendant's theft of the cell phones caused a retail shortage at Sprint stores or interfered with the maintenance of its usual stock, and, as a consequence, caused Sprint to lose potential retail sales."). Here, unlike in *Ferdman*, the government has shown that the defendants took merchandise based on promises to pay a certain amount for it, but did not pay as promised.

## Conclusion

The Court should order Abramov to repay his victims as contemplated by the Proposed Restitution Order.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: *[signature]*
Andrew Thomas
Assistant United States Attorney